Ruffin, Chief Justice.
 

 The act, under which the plaintiffs claim, cannot be read without receiving a vivid impression, that it was meant to legitimate these persons as the children of Burwell Perry. It states them to be “ the illegitimate children of Burwell Perry;” and then alters their name from Gay to Perry, and by this last name they are made legitimate and capable to take and inherit any estate, either real or personal, in as full and ample a manner as if they had been born in lawful wedlock. It seems to us, that there can be but one answer to the questions: As whose children are they legit'mated? from whom may they take and inherit property? It would have been more formal and professional to have written the act, that they should be deemed the legitimate children of Burwell Perry, and might succeed to him. But if the act had been so drawn, though the expres
 
 *30
 
 sion would have
 
 been more
 
 precise, yet the sense would not kave keerl P^ner ^ *s now" Uor, certainty the legitimacy enacted must take the place of the illegitimacy recited. This is a necessary implication from the recital: else, why make such a recital at all? It is on this point, that the present case differs from that of
 
 Drake
 
 v.
 
 Drake,
 
 4 Dev. 110; in which it did not appear whose illegitimate offspring the persons were deemed by the Legislature to be. But here that fact is affirmed, and necessarily controls the construction of the act, and renders its meaning obvious. When thus rendered, it is our duty to execute the law, whether it be a public or private statute; for the difference between them is not in their obligation, but only in the rules of construction. The latter is never carried beyond
 
 its
 
 letter or a plain implication. Here, we think the implication a necessary one, from the language of the act, unaffected of course by the agency of the father in procuring it to be passsed.
 

 But although the agency oí tbe father can have no influence on the construction of the act, it may be material to give effect to it, and make it operate on his property. We do not mean to say positively that the Legislature cannot make one who is out of the line of descents, succeed to an ancestor against the consent of the ancestor, instead of him who would be heir, according to the general law. Perhaps, if the power of disposition by the ancestor in his life time be not restricted, and as the law gives the capacity to inherit, it may not be be5mnd the power of the Legislature, by even a private law, passed before the death of the owner, to annul the capacity of one person to succeed and confer it on another. But if that can be done, it is not to be presumed to have been intended, without an explicit manifestation of such intent. On the contrary, the general principle is, that private acts are in the nature of assurances at common law; and, therefore, that their operation is meant to depend on the consent of those persons who are in esse, and whose estates are the subjects of the acts. Whatever difficulty there might be upon the question of legislative power in the case supposed, of a legitimation against the will of the ancestor, it does not exist in this case. The bill explicitly states the
 
 *31
 
 father’s consent to the act, and it is admitted by the rer; and, consequently, his estate is bound not merely by force of the statute, but by that and his own act and consent, together.
 

 The decree must be reversed, and the demurrer overruled; and the cause remanded for an answer and other procedings in the court below. The costs in both courts must be paid out of the assets of the intestate.
 

 Per Curiam. Decree reversed.